**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION**

| | | |
|---|---|---|
| MARCUS CRAWFORD, | § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 5:19-CV-00076-RWS-CMC |
| v. | § § | |
| MIKE ROSTOLLAN, GARY ALLEN, TRAVIS BISHOP, TERRANCE HASKINS, | § § § | |
| Defendants. | § § | |

**ORDER**

Plaintiff Marcus Crawford, a former inmate of the Federal Correctional Institution at Texarkana, sued Dr. Terrance Haskins, Nurse Mike Rostollan, Nurse Gary Allen and Nurse Travis Bishop, complaining of alleged violations of his rights. This Court referred the case to the United States Magistrate Judge, who recommend dismissal for failure to state a claim. Docket No. 19. For the following reasons, that recommendation is **ADOPTED**, and the above-titled matter is **DISMISSED WITHOUT PREJUDICE**.

### I. Background

While incarcerated, at around 6:30 a.m. on May 22, 2019, Plaintiff ingested medication. Soon after, he began experiencing severe headaches and sought medical attention. Twice that day, Plaintiff's blood pressure was monitored by medical staff—first, by a dental assistant, then by Nurse Bishop. Both times, Plaintiff's blood pressure was normal. His headache, however, grew worse throughout the day and into May 23's early-morning hours, when he reported a severe headache to the officer-on-duty. That officer relayed the report to his lieutenant, who said Plaintiff should wait until sick call the next morning.

Plaintiff went to sick call the next morning, during which Nurse Allen took his vital signs. While smirking, Nurse Allen told Plaintiff nothing was wrong, and Plaintiff complained about Allen laughing at him. Nurse Allen replied that Plaintiff could not tell him whether he could smile and told Plaintiff to get out of his office and go to the lobby. As he was leaving, Nurse Allen called Plaintiff back and asked if he was ready to tell the truth. Plaintiff replied he was telling the truth. He was holding his head, and Nurse Allen falsely accused Plaintiff of wanting to attack him. Nurse Allen got on the phone and acted like he was calling the lieutenant and then started laughing.

After Plaintiff left the medical unit, Nurse Allen sent Nurse Bishop to bring Plaintiff back. Nurse Allen again asked if Plaintiff was going to tell the truth about his headache. Nurse Allen also said he had talked to the lieutenant again, but he did not want to write Plaintiff a disciplinary case due to the paperwork. He told Plaintiff to lay down, take a nap and return to the medical unit a few hours later.

When Plaintiff returned, Nurse Allen asked how his head was feeling, and Plaintiff again reported severe pain. Nurse Allen replied, in a vulgar manner, that Plaintiff was faking and lying. He noted Plaintiff had his mother calling the regional office. Later, Plaintiff was called into the counselor's office, where he was questioned about his mother calling. Plaintiff stated he needed some real medical attention because the staff was not trying to help him. He went back to his room and laid down. When he awoke, Plaintiff attempted to use the restroom, but fell down before he could reach it. His cellmate alerted the duty officer, who called the medical staff.

Plaintiff states Lieutenant Rogers, Officer Endsley, a man in plain clothes, an individual whom Plaintiff identifies as "J. Featherston" and Nurse Rostollan came to the scene. While Plaintiff was on the floor, Nurse Rostollan stated he knew Plaintiff and that Nurse Allen had said

Plaintiff had been faking an injury. Nurse Rostollan said Plaintiff was faking and could walk to the medical department, and the officers walked him there holding his arms on each side.

At the medical department, Plaintiff stated his vital signs were checked and read as fine. Plaintiff told Lieutenant Rogers that he was not faking and that his head was really hurting. Lieutenant Rogers instructed the medical personnel to take Plaintiff to a local hospital, where a CT scan was administered. Plaintiff's test results were normal, and the doctor determined Plaintiff's headache was likely a side effect of medication. Plaintiff was given additional medication and was discharged from the hospital.

The next morning, Plaintiff requested a copy of his medication's side effects warning, but Nurse Bishop said such requests must be made by a nurse. Thus, Plaintiff refused his medication, and Nurse Bishop told Plaintiff he would need to be placed under a medical hold, to which Plaintiff agreed. Nurse Bishop then asked how his near-death experience was and if it was fun, and Plaintiff asked if he thought that was funny, to which Nurse Bishop replied that he did.

Later that day, Plaintiff was called to the officer's station. Nurse Allen and Dr. Haskins took him to the medical building lobby and locked the door. They told him the camp administrator wanted to tell him not to contact anyone outside the compound and, instead, to have that person call the regional office. Otherwise, they told Plaintiff, he would be put in the Special Housing Unit. Nurse Allen stated that he was thinking about putting Plaintiff in the Special Housing Unit anyway. Plaintiff contended Nurse Allen then began mocking him by asking what kind of man has his mother call someone about his problems.

A few days later, Dr. Ogden contacted Plaintiff about why he was not taking his medications. Plaintiff explained about his headaches, and Dr. Ogden became upset and said he was going to put Plaintiff on permanent medical hold. He told Plaintiff he would have to sign a

refusal form, which Plaintiff did. Dr. Ogden also asked where Plaintiff was going when he got out of prison, stating he wanted to be sure he was not living in the same state as Plaintiff.

Plaintiff concluded his complaint by stating he did not fake anything, but simply did what he was supposed to do; however, he was mocked, humiliated and threatened by the people from whom he was seeking treatment. He stated he wanted a transfer to another facility if Nurse Allen continued to work there. Since filing the lawsuit, Plaintiff has been transferred to the U.S. Penitentiary in Inez, Kentucky.

## II. The Report of the Magistrate Judge

After review of the pleadings, the Magistrate Judge issued a Report recommending the lawsuit be dismissed. The Magistrate Judge first observed Plaintiff did not pay the initial partial filing fee of $24. Instead, he filed a notice purportedly authorizing the Court to take monthly withdrawals from his inmate trust account. As noted in the Court's prior order (Docket No. 13), Plaintiff is responsible for payment of the fee, and he must authorize appropriate withdrawals. Thus, the Magistrate Judge stated Plaintiff's lawsuit could be dismissed for failure to prosecute or to obey an order of the Court.

But the Magistrate Judge still addressed the merits of Plaintiff's allegation, finding that Plaintiff failed to allege deliberate indifference to his serious medical needs. Indeed, Plaintiff's pleadings showed he was evaluated each time he complained of headaches, and each time the exams proved normal, including multiple vital sign checks as well as a CT scan at the hospital. Plaintiff further admitted he had access to common headache remedies, such as aspirin and ibuprofen, and he did not allege any harm.

Plaintiff complains of nothing more than verbal abuse, mocking and humiliation. The Magistrate Judge recognized that such treatment would be upsetting, improper and unwarranted,

particularly from professionals tasked with an inmate's well-being. But mere threats and verbal abuse do not set out constitutional violations, even when the verbal abuse comes from medical personnel. Furthermore, while the Magistrate Judge stated Plaintiff referred to retaliation in his complaint, he did not plead facts sufficient to set out a viable retaliation claim. The Magistrate Judge, therefore, recommended dismissal without prejudice for failure to state a claim upon which relief may be granted.

### III.     Plaintiff's Objections to the Report

In his objections, Plaintiff states he was given medication to take for tuberculosis, even though he never had tuberculosis nor any symptoms of that disease. After several days of taking this medication, he began suffering migraines. He states this whole situation could have been avoided if he had not been lied to about taking the medication. Plaintiff also complains he has been placed in the Special Housing Unit for a disciplinary infraction which another inmate committed, but then the other inmate lied about it and blamed Plaintiff. Plaintiff attaches a number of exhibits to his objections, several of which concern a disciplinary case he received in July 2019, after he filed this lawsuit. He also attaches medical records showing the examinations which he received, including the normal findings on his vital signs, as well as his refusals to take prescribed medications because he did not believe he had tuberculosis. Certain portions of these records give the medical staff's versions of their encounters with Plaintiff, and the Court will disregard these because for purposes of this review of the Magistrate Judge's Report, Plaintiff's allegations are taken as true. Other than the staff's versions of encounters with Plaintiff, the medical records furnished by Plaintiff essentially mirror the allegations of Plaintiff's complaint.

## IV.    Discussion

Plaintiff's objections focus on his allegations that he was wrongly given tuberculosis medication and his July 2019 disciplinary case, which Plaintiff alleges was retaliatory. Plaintiff failed to raise either claim until his objections, so they are not before this Court. *See Finley v. Johnson*, 243 F.3d 215, 219 n. 3 (5th Cir. 2001); *Cupit v. Whitley*, 28 F.3d 532, 535 n. 5 (5th Cir. 1994).

Plaintiff's objections do not mention or address the Magistrate Judge's conclusions that he did not pay the initial partial filing fee as directed and that the allegations of his complaint failed to state a claim upon which relief may be granted. Hence, Plaintiff is barred from *de novo* review of the Magistrate Judge's conclusions in this regard. *See* 28 U.S.C. §636(b)(1) (district judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.")

In keeping with this statute, the Court has conducted a careful *de novo* review of those portions of the Magistrate Judge's proposed findings and recommendations to which the Plaintiff objected. Upon such *de novo* review, the Court has determined the Report of the Magistrate Judge is correct and the Plaintiff's objections are without merit. It is accordingly

**ORDERED** that the Plaintiff's objections are **OVERRULED** and the Report of the Magistrate Judge (Docket No. 19) is **ADOPTED** as the opinion of the District Court. It is further

**ORDERED that** the above-styled civil action is **DISMISSED WITHOUT PREJUDICE** for failure to state a claim upon which relief may be granted. It is further

**ORDERED** that any and all motions which may be pending in this civil action are hereby **DENIED-AS-MOOT**.

**So ORDERED and SIGNED this 13th day of May, 2020.**

*[signature: Robert W Schroeder III]*
ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE